UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE L. JACOB,

    Plaintiff,

v.                                                                                 Case No. 1:12-cv-850
                                                                                 Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on January 8, 1960 (AR 122).[1] He alleged a disability onset date of March 28, 2008 (AR 122). Plaintiff earned a GED and had previous employment as a factory worker including being a sewing machine operator, assembly worker, team leader, forklift driver and material handler (AR 176, 178-82 ). Plaintiff identified his disabling condition as "[t]orn rotator cuff in both shoulders," which resulted in the limited use of his arms, inability to sleep, neck and shoulder pain and headaches (AR 170). On November 19, 2010, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 9-16). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

The ALJ found that plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff meets the insured status requirements of the Act through December 31, 2013 and has not engaged in substantial gainful activity since the alleged onset date of March 28, 2008 (AR

11). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative joint disease – bilateral shoulders (post-operative); and cervical degenerative disease (AR 11). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 1.02.B. (major dysfunction of a joints(s) (due to any cause)) and 1.04 (disorders of the spine) (AR 12).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> [T]o perform work limited to lifting 20 pounds occasionally and 10 pounds frequently, with sitting for up to 6 hours and standing or walking for up to 6 hours in an 8-hour workday, with normal breaks. He can perform no overhead work and less - than - frequent extension or flexion of the neck. There must be less - than - frequent pushing or pulling with the upper extremities and never with exertion over 25 pounds. Finally, there must be less - than - frequent rotation of the neck, forward reaching, or side reaching away from the body.

(AR 12). The ALJ further found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 14).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 15). Specifically, plaintiff could perform the following jobs in the regional economy (defined as the state of Michigan): security guard (3,000 jobs); and usher / attendant / ticket taker (2,000 jobs) (AR 15). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from March 28, 2008 (the alleged onset date) through November 19, 2010 (the date of the decision) (AR 16).

## III. ANALYSIS

Plaintiff has raised three issues on appeal.

### A. The ALJ gave no valid reasons for rejecting plaintiff's reported symptoms and limitations.

#### 1. Legal standard

Plaintiff disputes the ALJ's credibility determination with respect to the ALJ's review of his medical record, his symptoms and his limitations. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

### 2. ALJ's decision

Here, plaintiff objects to numerous statements made by the ALJ in reviewing the medical evidence. Given the scope of plaintiff's objections, the Court will reproduce that relevant portions of the ALJ's decision:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant alleged and testified to general limitations in the use of his upper extremities, to the point where he is unable to lift much weight, or anything very often, without considerable pain (Exhibits 10E; 15E; testimony). He further noted he is limited in even simple household activities, has increased pain when exposed to cold, cannot sit very long, and experiences "jarring" pain if he walks vigorously. His neck is a source of constant discomfort and is limited in its movement, as well.
>
> The medical evidence of record is more than sufficient to confirm that the claimant had bilateral rotator cuff tears and degenerative joint disease. These conditions had to be addressed by surgery. The radiographic evidence also confirms the degenerative changes in the cervical spine. As a result, I am persuaded the claimant has a basis for complaints of pain and, although not objectively demonstrated, the conclusion that he has adhesive capsulitis bilaterally (Exhibit 9F/1) is credible. Therefore, some functional limitations are appropriate.

However, the evidence is not so persuasive as to support the claimant's alleged limitations at face value. First, the claimant had a good result from his left shoulder surgery, was "doing well" in April 2007 (Exhibit 4F/31), and was returned to work without restrictions (ibid). Improvement was also noted after right shoulder surgery (Exhibit 4F). Once again, the claimant was returned to work without restrictions, albeit on a trial basis (ibid, at 11). Admittedly, this was not a decision made with complete confidence on the part of the doctor, but clearly no such attempt would have been made if the claimant had not shown significant improvement and was not doing well at the time.

The records confirm increasing and persistent complaints of pain in the shoulders thereafter, primarily on the right side. But again, the claimant demonstrated reasonably good range of motion at first (Exhibit 4F/4, 7), and never demonstrated a loss of motion beyond that of over - the - shoulder activity. In addition, he was noted to have reasonably good strength (Exhibit 8F/4).

As for the neck, the degenerative changes noted on MRI in June 2009 were characterized by the radiologist as "mild" (Exhibit 12F). Dr. Kim Eastman, the surgeon, noted the claimant had no neurological deficits in November 2009 (Exhibit 14F/1) and Dr. Rashmi Juneja described the claimant as neurologically stable with no radicular pain in June 2009 (Exhibit 15F/12). Apparently, the claimant saw a neurosurgeon in consultation and surgery was not recommended (testimony).

I take note the claimant emphasized that neither Dr. Eastman nor Dr. Juneja have returned him to work. There does not seem to be any difference between the claimant's medical status from when Dr. Eastman released him to unrestricted work in September 2008 and when he later restricted the claimant from all work, other than the claimant's report of increasing pain and subjective limitation of motion in the shoulders. These subjective complaints are insufficient to support disability. While the claimant reported significant limitation in the range of motion in his neck, he demonstrated good range of motion at his hearing, without evidence of pain behaviors. Additionally, the claimant was functionally evaluated in March 2009 by an occupational therapist, Barbara Rounds (Exhibit 8F). Ms. Rounds recommended sedentary restrictions and even commented that she was uncertain as to the claimant's ability to perform full time work, but also noted that the claimant self-limited in certain activities due to his complaints or at least fear of pain (ibid, at 5). Also noteworthy is the comment that the claimant made to Dr. Eastman in April 2007, when he noted he could retire in "about another year" (Exhibit 4F/31).

As a result, I am not persuaded by Dr. Eastman's conclusion in March 2009, the same month as Ms. Rounds' evaluation, that the claimant would "never" return to gainful employment (Exhibit 9F/3). This is particularly true in light of Dr. Giresh Juneja's comment in January 2009 that the claimant "may" be able to return to some kind of work, just not something involving driving (Exhibit 6F/2).

In considering the opinions of the various evaluators and doctors, I assign very limited weight to Dr. Eastman's conclusions, as they are internally inconsistent with his findings as time progressed. I assigned limited weight to both Dr. Giresh Juneja and Dr. Rashmi Juneja, as they appear to recognize the lack of objective findings, while over-emphasizing the complaints of pain. Both doctors left the door open to a return to work. Some weight, though certainly not controlling weight, is given to the conclusions of Ms. Rounds who, while not a medical doctor, at least performed the most objective assessment of the claimant. No weight is given to the State disability evaluator (Exhibit 10F), who was neither a medical evaluator nor able to review all the medical information, given that the evaluation was performed in April 2009.

In this case, I find that no single doctor described objective findings that support a persuasive determination of the claimant's limitations. Therefore, the above residual functional capacity assessment is instead reached by taking into account the credible portions of the claimant's complaints, the evidence of initial improvement after shoulder surgery, the findings on the functional assessment by Ms. Rounds, the lack of any clear or supportable diagnosis beyond degenerative joint disease, adhesive capsulitis and mild degenerative disc disease, and the portions of the doctors' opinions which are based on the credible medical findings.

(AR 12-14).

### 3. Sit and squirm test

Plaintiff contends that the ALJ determined his credibility using the discredited "sit and squirm test," i.e., that the ALJ denied plaintiff's claim for disabling pain based solely on the ALJ's observation of plaintiff at the administrative hearing. *See Martin v. Secretary of Health and Human Services*, 735 F.2d 1008, 1010 (6th Cir. 1984) ("[W]e cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited 'sit and squirm' test"). The "sit and squirm test" does not apply in this case because plaintiff's claims involved conditions other than disabling pain and the ALJ did not dismiss plaintiff's claim solely on his observations of plaintiff at the hearing. *See Martin*, 735 F.2d at 1010.

### 4. The ALJ erred by reviewing "stale evidence," using the terms "improvement" and "stable," and referring to doctors' orders releasing him for work

Plaintiff contends that the ALJ improperly reviewed his medical record, which resulted in an inference that plaintiff did not suffer from disabling symptoms. First, plaintiff contends that the ALJ improperly referenced "stale evidence" of his condition before the alleged onset date of March 28, 2008. The alleged "stale evidence" is the ALJ's observation that plaintiff had a good result from his left shoulder surgery and was doing well in April 2007 (AR 313, 316-17). Second, plaintiff contends that the ALJ improperly referred to "improvement" after his right shoulder surgery in March 2008 (AR 293, 296, 297, 303). Third, plaintiff contends that the ALJ improperly observed that he was "neurologically stable" in June 2009 (AR 394). Fourth, plaintiff criticizes the ALJ because she referred to plaintiff being released for work after his 2007 surgery (before his alleged disability onset date) (AR 313) and in September 2008 (after his alleged disability onset date). (AR 292-93). Plaintiff's contentions are not well taken. The ALJ's statements trace plaintiff's medical history and are supported by the medical record.

### 5. Range of motion and strength

Plaintiff contends that the ALJ improperly referred to him as having "good shoulder range of motion" in the latter part of 2008 and "reasonably good strength" in March 2009. The ALJ's determination that plaintiff demonstrated reasonably good range of motion is supported by plaintiff's treating physician, Dr. Eastman, who stated on December 30, 2008, that plaintiff "has pretty reasonably range of motion of his shoulders" (AR 286). The ALJ's characterization of plaintiff's strength as "reasonably good" was based on testing from March 10, 2009, which reflected that his right shoulder strength was "WFL @ 4/5 strength, elbow flexion 4+/5, triceps 4/5 and wrist

9

extension 4+/5" and his left shoulder strength as "grossly 4/5" and "his strength distal from the shoulder was grossly 5/5" (AR 352, 355). While the ALJ's use of the term "reasonably good" strength may be subject to interpretation, plaintiff cites no authority for his claim that the ALJ's characterization of these test results was inaccurate.

### 6. Seasonal symptoms

Plaintiff contends that the ALJ erred by referring to his lack of "arm symptoms" in June 2009 because plaintiff's "arm symptoms" are seasonal (i.e., cold aggravates his symptoms). In this regard, plaintiff states that he had a "hiatus" in his reported arm symptoms from March 2009 through November 2009. Plaintiff's Brief at pp. 14-15. In essence, plaintiff admitted that he was free from "arm symptoms" for approximately nine months out of the year. Plaintiff's admission that he suffered no "arm symptoms" during the majority of the year supports the ALJ's determination that he does not suffer from a disabling condition.

### 7. Cervical condition

Plaintiff contends that the ALJ's citation to his condition as "mild" cervical degeneration amount to the ALJ "playing doctor" and failing to give credit to his symptoms. The ALJ's determination was based upon an MRI performed on June 11, 2009 (AR 375-76). At that time, the radiologist found that plaintiff had mild degenerative changes or unremarkable findings throughout his cervical spine (AR 375-76). The radiologist ultimately concluded that MRI results were of uncertain significance given plaintiff's reported symptoms of pain:

> Cervical spondylosis greatest at C6-7 with moderate left foraminal stenosis. Correlate with left C7 root distribution symptoms. Patient's symptoms are primarily right-sided according to the history that was provided. This is therefore of uncertain significance.

(AR 376). Given this record, the ALJ's characterization of plaintiff's cervical degeneration as "mild" is supported by the medical record.

### 8. Plaintiff's comment regarding retirement

Plaintiff contends that the ALJ erred by referring to plaintiff's comment in April 2007 that he could retire in one year. Plaintiff's statement was made during an examination with Dr. Eastman on April 10, 2007 (AR 313). At that time, nearly one year before plaintiff's alleged disability onset date of March 28, 2008, Dr. Eastman provided the following history:

> [Plaintiff] has come a long way. He wants to return to work. A lot of his job is driving and he thinks he can do it. He has about another year of work and then he has the option of retiring.

(AR 313). Dr. Eastman noted that plaintiff's exam revealed "very good range of motion," "fairly good strength" with "some relative weakness," "no significant pain" with his left shoulder rotator cuff tendon repair "doing well" (AR 313). Plaintiff was allowed to return to work without restrictions on April 13, 2007 (AR 313).

Plaintiff testified that the disability onset date of March 28, 2008, was related to his right shoulder surgery, that he attempted to work for about two and one half weeks in September 2008, that he could not do the job, that his employer (General Motors) sent him to the doctor and that "they took me off [work]" (AR 38-39). During his return to work in September 2008, plaintiff was also suffering from neck problems (AR 40). Based on this record, there does not appear to be a clear connection with plaintiff's ability to retire in approximately April 2008 and his alleged disability onset date of March 28, 2008. Nevertheless, the ALJ could consider plaintiff's comment to Dr. Eastman as evidence that plaintiff contemplated retirement rather than returning to the workforce.

### 9. Summary

The court disagrees with plaintiff's various characterizations of the ALJ's decision as "playing doctor, lifting evidence out of context, cherry-picking the evidence or drawing speculative inferences." Plaintiff's Brief at p. 16. The ALJ discussed, at length, the inconsistencies between plaintiff's claims and other evidence of record. Plaintiff's alleged errors essentially ask this court to re-weigh the evidence with respect to portions of plaintiff's medical history and then determine whether it agrees (or disagrees) with the ALJ's credibility determination as to that particular event. In short, plaintiff is asking this court to perform a *de novo* review of the record and re-evaluate her credibility. It is beyond the scope of this court's review to perform such a review. *See Brainard*, 889 F.2d at 681.

Substantial evidence supports the ALJ's decision, which sets forth a reasonable explanation for discrediting plaintiff's testimony regarding the severity of his medical condition and resulting limitations. The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. As the court explained in *Mullen v. Bowen*, 800 F.2d 535 (6th Cir. 1986):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen*, 800 F.2d at 545, quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Plaintiff's claims regarding the ALJ's credibility determination should be denied. Based on the foregoing, the ALJ's credibility determination was a reasoned one which was supported by substantial evidence.

*Rogers*, 486 F.3d at 249. The Court finds no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379.

### B. The ALJ violated the treating physician rule.

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician Dr. Eastman. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and §

13

416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

In a "Statement of Employee's Physician Form" to General Motors, dated March 19, 2009, Dr. Eastman was asked to "[g]ive an approximate date on which gainful employment of any kind may be expected to resume" (AR 363). In response, Dr. Eastman wrote "never" (AR 363). The ALJ gave "very limited weight" to this conclusion (AR 14). Although Dr. Eastman was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff could "never" work. *See* 20 C.F.R. § 404.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

14

Even though the ALJ was not bound by Dr. Eastman's opinion, the ALJ also gave good reasons for not crediting that opinion, noting that the opinion was internally inconsistent with the treatment notes, inconsistent with Dr. Giresh Juneja's comment in January 2009 that the claimant may be able to return to some kind of work, and inconsistent with the testing performed by Ms. Rounds in March 2009. On September 15, 2008, approximately six months after plaintiff's alleged disability onset date, Dr. Eastman stated that plaintiff could return to work without restrictions (AR 292-93). However, in October, November and December, 2008, the doctor's progress notes included the statement that plaintiff was "unable to do his regular job physically" (AR 286, 289, 291). Despite this statement, Dr. Eastman observed in December 2008 that plaintiff had "pretty reasonable range of motion of his shoulders" (AR 286). In November 2009, the doctor observed that he was not "finding hard neurologic deficits" (AR 378).

Contrary to Dr. Eastman's opinion that plaintiff could "never" work as of March 19, 2009, his own records state that plaintiff was only precluded from performing work other than his "regular job." In January 2009, Dr. Girish Juneja of West Michigan Pain found that there were very limited options in treating plaintiff's chronic bilateral shoulder and upper extremity pain (AR 346). Dr. Juneja noted that one treatment option, a dorsal column stimulator, might possibly allow plaintiff to resume high load driving (AR 347). Dr. Juneja further observed that "[i]t is possible that [plaintiff] may be able to go back to some type of gainful employment, but not the driving if his pain improves" (AR 347). Finally, the functional capacity evaluation performed by Ms. Rounds did not exclude full time employment. Ms. Rounds concluded that plaintiff was capable of performing sedentary work, noting that his ability to engage in full time activity was "suspect due to pain" (AR 357).

15

While the medical records in this case reflect that plaintiff suffered some limitations, the records do not support Dr. Eastman's opinion that plaintiff could never work. Based on these medical record, the ALJ provided good reasons for rejecting Dr. Eastman's opinion.

### C. Other limitations that should have been included in the hypothetical question posed to the vocational expert

In his brief, plaintiff sets forth a list of limitations which he believes should have been included in the hypothetical question posed to the vocational expert (VE): concentration deficits from the pain (AR 191, 221); inability to reach in any direction with his right arm (AR 187, 191, 217, 221); inability to lift anything overhead (AR 191); inability to grip with the right hand (AR 355); inability to carry anything with the right arm (AR 239); inability to stand for prolonged periods (AR 353); inability to sit for prolonged periods (AR 203-04, 239); inability to walk any distance (AR 43, 191, 221); and no exposure to cold (AR 189, 219, 291). Plaintiff's Brief at pp. 16-17. Plaintiff cites no medical evidence to support these self-reported limitations.[2]

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those

---

[2] Plaintiff's claims that he is unable to stand for prolonged periods and should have no exposure to the cold, while given as part of his history, were not established by objective medical evidence (AR 291, 353). With respect to plaintiff's right hand, the medical record does not establish an inability to grip with that hand, but rather that the grip strength of the right hand was "significantly weaker than the left" (AR 355).

16

limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, plaintiff provides no evidence to support his bald assertion that these limitations were ones the ALJ should have found creditable and included in the hypothetical question posed to the VE. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen*, 964 F.2d at 529, quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). Accordingly, plaintiff is not entitled to relief on this ground.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: August 30, 2013                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).