UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE L. JACOB, )
    Plaintiff, )
) No. 1:12-cv-850
-v- )
) HONORABLE PAUL L. MALONEY
COMMISSIONER OF SOCIAL SECURITY, )
    Defendant. )
_____)

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

Before this court is a Report and Recommendation issued by Magistrate Judge Brenneman (ECF No. 19) recommending that the court affirm the Commissioner of Social Security's decision to deny Willie L. Jacob's claim for disability insurance benefits. Plaintiff Jacob has filed timely objections to the magistrate judge's recommendation.

For the reasons discussed below, the court will adopt the Report and Recommendation and affirm the Commissioner's decision.

### I. STANDARD OF REVIEW

Parties have 14 days to file written objections to the proposed findings and recommendations in a magistrate judge's report and recommendation ("R&R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews *de novo* the portions of the R&R to which objections have been filed, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only specific objections are entitled to *de novo* review under the statute, *see Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam), and the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to object to an issue waives that issue, along with the party's right to appeal that issue. *United States v. Sullivan*,

431 F.3d 976, 984 (6th Cir. 2005); *see Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice).

"This court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). So long as the Commissioner's decision is supported by substantial evidence, this court must affirm, even if substantial evidence also supports the opposite conclusion and even if the court would have decided the matter differently. *See Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

## II. DISCUSSION

Mr. Jacob objects to the R&R on two main grounds. The court will address each in turn.

### A. The ALJ's Credibility Determination

Mr. Jacob argues that the ALJ erred when she found his claimed symptoms and limitations to be not credible. An ALJ's credibility determination is given substantial deference, and the district courts "may not disturb [such a determination] absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Still, "those determinations must be reasonable and supported by substantial evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). The Code of Federal Regulations instructs ALJs to accept a claimant's reported symptoms "to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

As the magistrate judge pointed out, the ALJ spent significant time explaining why she rejected Mr. Jacob's "statements concerning the intensity, persistence and limiting effects of [his] symptoms." As he did in his initial brief, Jacob objects to various aspects of the ALJ's analysis, arguing that these alleged errors invalidate the ALJ's decision.

### 1. A "Sit and Squirm" Test

First, Mr. Jacob objects to the ALJ's observation that at the hearing, Jacob "demonstrated good range of motion . . . without evidence of pain behaviors." This, he argues, constitutes a return to the "infamous and thoroughly discredited 'sit and squirm' test." *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983). It is true that the courts of this circuit look with disfavor on diagnoses from the bench. But Jacob does not show that the ALJ's passing observation, making up one line out of 2 ½ single-spaced pages of analysis, irrevocably taints the entire decision. As the magistrate judge points out, the *Weaver* court's own rejection of "sit and squirm" was limited to decisions rejecting pain claims based "solely on the ALJ's observations at the hearing." *Id.* Here, however, the ALJ's decision was based on much more than her observations. Jacob argues that we cannot assume that the ALJ would have made the same decision if she had not considered her personal observations on this point, and therefore the court must reverse her decision. But this argument would read the word "solely" out of the Sixth Circuit's ruling. This court may not do so, and so it will continue to analyze this question under the ordinary standard of whether the ALJ's decision was reasonable and supported by substantial evidence.

### 2. Cervical Degeneration

Mr. Jacob next objects to the ALJ's use of his "mild" cervical degeneration. He argues that an ALJ should not be allowed to determine whether Mr. Jacob's claimed symptoms were consistent

with "mild" cervical degeneration. Indeed, he argues that "it is doubtful whether even a doctor would be competent to say that given findings are inconsistent with disabling levels of symptoms." And even if this finding failed to support Mr. Jacob's claimed symptoms, a lack of support is not the same as inconsistency. Mr. Jacob has some point here. Lack of support is not the same thing as inconsistency, and the applicable regulations provide that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). With that said, like the Sixth Circuit's decision above, the key word in this regulation is "solely." The fact that Mr. Jacob's MRI results may not substantiate his claims is certainly relevant to his credibility, even if the ALJ is not allowed to reject those claims based solely on a lack of substantiation. As we will see, the ALJ's decision was not so limited.

### 3. "Stale Evidence"

Third, Mr. Jacob objects to what he calls "stale evidence": the fact that he had an effective shoulder surgery in April 2007, a year before he claims his disability began. It is true that this evidence does not show that Mr. Jacob was able to work in March 2008. But Mr. Jacob's medical history is clearly relevant to determining his functional limitations as of that date. The law does not require ALJs to ignore all medical history from before the claimed disability date. The ALJ thus did not err in considering the results of Mr. Jacob's surgery.

### 4. Improvement, Neurological Status, and Range of Motion

Relatedly, Mr. Jacob argues that the ALJ erred in citing his "improvement" after another shoulder surgery in March 2008, the fact that he was deemed "neurologically stable" in June 2009,

and his doctor's statements about his range of motion in late 2008. It is of course true that one's condition can remain stable or even improve while still leaving him disabled. Similarly, one can have an improved range of motion while still being disabled. But that is not to say that these records are irrelevant. The fact that in July 2008 Mr. Jacob had "two-thirds of range of motion" in his shoulder (AR297) is clearly relevant to his limitations as of that date. The fact that he improved after surgery is similarly an important thing to know for someone looking to interpret a doctor's statements about his patient's health. And neurologic stability is similarly relevant, particularly for one, like Mr. Jacob, who claims a degenerative condition.[1] Mr. Jacob points out that at the time his doctor was praising his increased range of motion, he was also opining that Mr. Jacob could not return to his old job. But inability to perform one job does not necessarily mean an inability to perform all jobs. Mr. Jacob has not shown that the ALJ erred by considering any of this evidence.

### 5. Functional Capacity Evaluation

Mr. Jacob next objects to the ALJ's characterization of the March 2009 functional capacity evaluation as showing that he had "reasonably good strength." As the magistrate judge noted, this evaluation reported that Mr. Jacob's shoulder strength, elbow flexion, triceps, and wrist extension, among other things, all rated at least 4/5. (*See* AR355.) It was entirely reasonable for the ALJ to characterize this as "reasonably good strength." Mr. Jacob further objects that the ALJ could not know just what these results meant for his functional ability, and that by using this information, she was impermissibly "playing doctor." But Jacob ignores the fact that the evaluator made specific

---

[1] Mr. Jacob also argues that his neurological status is irrelevant because his "chief limiting factor is not neurological but rather mechanical (shoulder and upper extremity pain and limitations resulting from bilateral torn rotator cuffs)." But pain, as counsel presumably knows, is transmitted through one's nerves, and so Mr. Jacob's neurological status is clearly relevant to his claimed disability.

conclusions regarding Mr. Jacob's condition, and that the ALJ specifically noted those conclusions in her discussion of the evaluation results: "Ms. Rounds recommended sedentary restrictions and even commented that she was uncertain as to the claimant's ability to perform full time work, but also noted that the claimant self-limited in certain activities due to his complaints or at least fear of pain." It was not error for the ALJ to look to this evidence in evaluating the credibility of Mr. Jacob's claim of total disability.

### 6. Return to Work

Mr. Jacob also objects that the ALJ misused the fact that he had been released to return to work after both surgeries. The first such release was well before he claimed disability, Mr. Jacob argues, and so is irrelevant to his status at that later time. As discussed above, however, Mr. Jacob's pre-claim health records provide important context for understanding his post-claim evidence, and so it was not error for the ALJ to consider this evidence. As for the later release, Mr. Jacob acknowledges that his ability to work in September 2008 is directly relevant to his disability claim. Yet he argues that the ALJ should have disregarded the fact that his doctor cleared him to work at that time because the doctor did so at Mr. Jacob's request and retracted it shortly thereafter. But as the ALJ noted elsewhere, Mr. Jacob's doctor was unlikely to have released him for work with no restrictions unless Mr. Jacob had not been doing well enough to at least justify the attempt. Indeed, Dr. Eastman's medical records from September note that Mr. Jacob "is coming along, he is improving, showing gradual steady improvement in his shoulder." (AR293.) Even after Mr. Jacob's attempt to go back to work failed, Dr. Eastman opined only that he was "unable to do his *regular* job," not that he was unable to do *any* job. (AR286, 289 (emphasis added).) It was therefore not error for the ALJ to consider this release as evidence of Mr. Jacob's physical condition at the time.

6

### 7. Seasonal Changes

In June 2009, Mr. Jacob reported to his doctor that he did not have any pain going down his arm. (*See* AR394.) Mr. Jacob now objects to the ALJ's consideration of that evidence. He argues that "not reporting arm symptoms to a doctor is not the same as being symptom free," while at the same time admitting that he had arm symptoms only during the winter. He also argues that this fact does not contradict his other claims, because he did not "simultaneously claim[] that he had arm symptoms." And he argues that even if he did have arm symptoms only in the winter, that would not prove that he was able to work.

These arguments all go to the weight of this evidence, not its relevance. The fact that Mr. Jacob reported no arm symptoms in June 2009 is clearly relevant to his ability to work at that time. Even if the court accepts Mr. Jacob's claim that his symptoms got significantly worse during the winter months, his status during the better times is still relevant. The ALJ therefore did not err in considering this evidence.

### 8. Retirement

Mr. Jacob next argues that the ALJ erred by pointing out that Jacob told his doctor in April 2007 that he would be able to retire in a year. He is correct that there is little evidence that this statement was connected to Mr. Jacob's disability claim in March 2008, but the magistrate judge acknowledged as much. Mr. Jacob wants to go further. He argues that even mentioning this point was reversible error.

This is incorrect. The question for the court is whether the ALJ's credibility determination was supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). Mr. Jacob's argument here would replace that test with a much looser one, looking to

whether the claimant can dispute at least one aspect of the ALJ's decision. The court declines to modify the Sixth Circuit's test in that manner.

### 9. Conclusion

Mr. Jacob's arguments suffer from a too-narrow understanding of relevance and a too-strict view of what the ALJ must see before finding a claimant less than fully credible. The relevance issues have been discussed above. As for credibility, Mr. Jacob repeatedly argues that the ALJ must accept his claims unless the medical evidence contains a direct, unambiguous contradiction. But this is not the relevant standard here. Rather, the ALJ's credibility determinations need only be "reasonable and supported by substantial evidence." *Rogers*, 486 F.3d at 249. It is true that an ALJ should accept a claimant's reported symptoms to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). But this does not require the type of direct contradiction that Mr. Jacob believes is necessary. The courts have long understood that subjective complaints such as pain cannot be objectively proved or disproved. For that reason, the courts in such situations look to evidence that would tend to indirectly corroborate or contradict a person's claims: the existence of a medical condition that could cause the symptoms; functional capacity evaluations; and other evidence that would suggest that the pain is or is not as intense as the person asserts. Mr. Jacob argues that such evidence is insufficient, but it really appears that in his mind, nothing short of an admission from Mr. Jacob himself would be sufficient to find him not credible. This is an unduly narrow reading of the regulation, which expressly allows the ALJ to look to both "objective medical evidence and other evidence."

The magistrate judge found that the ALJ's decision was supported by substantial evidence. Mr. Jacob does not dispute this finding, and this court agrees. For that reason, this court will not

disturb the ALJ's credibility determination. Mr. Jacob's objections on this issue are OVERRULED.

### B. The Treating Physician Rule

Next, Mr. Jacob argues that the ALJ improperly rejected the opinion of Dr. Eastman, his treating physician. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997). As the magistrate judge noted, a treating physician's opinion on the "nature and severity of [a claimant's] impairment" is given controlling weight if it is both (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). With that said, a treating physician's opinion that someone is "'disabled' or 'unable to work'" is not considered a medical opinion, and the Commissioner need not defer to such an opinion. *Id.* § 404.1527(d)(1).

In her decision, the ALJ noted that she "[was] not persuaded by Dr. Eastman's conclusion in March 2009 . . . that the claimant would 'never' return to gainful employment." This is nothing more than an opinion that Mr. Jacob is disabled, and so the ALJ was not required to defer to it under 20 C.F.R. § 404.1527(c). Regardless, the ALJ also pointed out inconsistencies between Dr. Eastman's opinion and other substantial evidence in the record. In particular, the ALJ pointed to three main inconsistencies: (1) "Dr. Eastman's conclusions . . . are internally inconsistent with his findings as time progressed"; (2) "Dr. Giresh Juneja's comment in January 2009 that the claimant 'may' be able to return to some kind of work, just not something involving driving"; and (3) the therapist who performed the functional capacity evaluation, who "recommended sedentary restrictions and even commented that she was uncertain as to the claimant's ability to perform full

9

time work, but also noted that the claimant self-limited in certain activities due to his complaints or at least fear of pain." (AR14.)

As for the first reason, Mr. Jacob again explains that Dr. Eastman granted him an unrestricted return-to-work slip in September 2008 only because Mr. Jacob wanted to try to return to work. As the court noted above, this strongly suggests that Dr. Eastman felt that Mr. Jacob's recovery had been going well. Regardless of the reason, the fact that Dr. Eastman allowed Mr. Jacob to return to work and then promptly removed him again requires some explanation. If, as Mr. Jacob now argues, this was "an isolated incident of excessive optimism," then the record should contain some discussion of why the evidence before that time had been misleading or otherwise did not accurately depict Mr. Jacob's true condition. But as the ALJ noted, "[t]here does not seem to be any difference between the claimant's medical status from when Dr. Eastman released him to unrestricted work in September 2008 and when he later restricted the claimant from all work, other than the claimant's report of increasing pain and subjective limitation of motion in the shoulders. These subjective complaints are insufficient to support disability." (AR14.) The fact remains, as Mr. Jacob admits, that Dr. Eastman "was willing to change his mind." Whether he did so because "events proved him wrong" or for some other reason is not clear from the record. The ALJ was therefore reasonable in treating this as an inconsistency.

The ALJ's second example was an opinion by Dr. Girish Juneja in January 2009, after he had examined Mr. Jacob on Dr. Eastman's referral. (AR346–47.) Dr. Juneja noted that Mr. Jacob had "very limited option[s]," as further surgery was not an option. The best Dr. Juneja could say is that "[i]t is possible that he may be able to go back to some type of gainful employment, but not the driving[,] if his pain improves." (AR347.) As Mr. Jacob notes, this is hardly a ringing

10

endorsement of his ability to work. But it is at odds with Dr. Eastman's flat claim that Mr. Jacob would "never" be able to work (AR363). At the very least, it suggests that Mr. Jacob's situation is not as clear-cut as Dr. Eastman claims.

Finally, we have the functional capacity evaluation. The occupational therapist who performed the evaluation, Barbara Rounds, concluded that "[b]ased on the FCE the client appears capable of working within the SEDENTARY strength classification as defined by the U.S. Department of Labor: Dictionary of Occupational Titles." Ms. Rounds had doubts about whether Mr. Jacob could sustain his effort over a full 8-hour work day, however: "Based on today's FCE, the client's ability to engage in full time work activity is suspect due to pain." (AR357.) This at least partly contradicts Dr. Eastman's opinion, which simply stated that Mr. Jacob could not perform "any occupation or employment for wage or profit." (AR363.)

These inconsistencies are not inconsequential. Dr. Juneja's opinion was based on his examination of Mr. Jacob, and Ms. Rounds's conclusions were based on significant physical testing. Add to this Dr. Eastman's own contradictory statements, and the court must conclude that the ALJ properly found that Dr. Eastman's disability opinion was inconsistent with substantial evidence on the record. The magistrate judge adequately explained this in his R&R, and Mr. Jacob has not pointed out any error with that analysis. His second set of objections are therefore OVERRULED.

**ORDER**

For the reasons discussed above, **IT IS HEREBY ORDERED** that the report and recommendation (ECF No. 19) is **ADOPTED** as the opinion of this court. The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**


Date: September 9, 2013              /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge